Fennemore Craig, P.C.
Laurel E. Davis (NV Bar No. 3005)
Jon T. Pearson (NV Bar No. 10182)
300 South Fourth Street, Suite 1400
Las Vegas, Nevada 89101
Telephone: (702) 692-8000
Email: ldavis@fclaw.com

Counsel for Timothy S. Cory, Chapter 11 Trustee

**EFILED AUGUST 8, 2008**

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In re | Chapter 11 |
| HDB, LLC, | No. BK-S-08-10685-BAM |
| Debtor. | |
| | Date: September 9, 2008<br>Time: 9:30 a.m. |

**MOTION FOR AUTHORITY TO OBTAIN CREDIT
ON A SUPERPRIORITY ADMINISTRATIVE BASIS
PURSUANT TO 11 U.S.C. § 364(c)(1)**

TIMOTHY S. CORY, Chapter 11 Trustee ("Trustee") for the estate of HDB, LLC ("Debtor"), submits this Motion for Authority to Obtain Credit on a Superpriority Administrative Basis Pursuant to 11 U.S.C. § 364(c)(1). This Motion is made and based upon 11 U.S.C. § 364(c)(1), Fed.R.Bankr.P. 2002, 4001(c) and 9014, upon these moving papers, the following Memorandum of Points and Authorities, the accompanying Declaration of Timothy S. Cory, Trustee ("Cory Declaration"), the record in this case, including the pleadings and documents filed on behalf of the parties, the arguments and representations of counsel, and any oral or documentary evidence presented at or prior to

the time of the hearing.

This Motion specifically requests that the Court enter an order:

1. Approving, pursuant to 11 U.S.C. §364(c)(1), postpetition financing in an amount not to exceed Two Hundred Fifty Thousand ($250,000) Dollars (the "364(c)(1) Loan"), and for the Trustee to adopt and execute all of the necessary loan documents which shall evidence the terms and conditions of the 364(c)(1) Loan. The principal term sheet for the 364(c)(1) Loan is attached to the Cory Declaration as <u>Exhibit 1</u>.

2. Approving the terms and conditions of the 364(c)(1) Loan and authorizing the Trustee to enter into the 364(c)(1) Loan on a final basis.

3. Authorizing the Trustee to enter into the loan documents necessary to obtain the 364(c)(1) Loan and take the all of the actions necessary to satisfy the conditions of the 364(c)(1) Loan.

4. Authorizing the Trustee, pursuant to 11 U.S.C. § 364(c)(1), to grant a superpriority administrative expense for the 364(c)(1) Loan on a final basis.

5. For such other and further relief as the Court deems appropriate under the circumstances.

## MEMORANDUM OF POINTS AND AUTHORITIES

### A.     Jurisdiction and Proceedings

1. The Court has jurisdiction over this case and this Motion pursuant to 28 U.S.C. § § 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). Venue is proper in this District pursuant to 28 U.S.C. § § 1408 and 1409(a).

2. On January 28, 2008, the Debtor filed its voluntary petition under chapter 11 of the United States Code and it is operating its business pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. On January 29, 2008, the Bank Group, together with Aspen, filed their <u>Joint</u>

FENNEMORE CRAIG, P.C.
LAS VEGAS

23856.1

- 2 -

1  Motion to Appoint Trustee Pursuant to 11 U.S.C. § 1104(a), together with declarations in
2  support thereof.  *See* Docket 13.

3      4.    On February 1, 2008, Debtor filed its Consent to Appointment of a Chapter
4  11 Trustee Pursuant to 11 U.S.C. § 1104(a).  *See* Docket 35.

5      5.    On February 15, 2008, the Court entered an Order Approving Joint Motion
6  to Appoint Trustee Pursuant to 11 U.S.C. § 1104(a).  *See* Docket 55.

7      6.    On February 21, 2008, the Court entered an Order Approving Appointment
8  of Timothy S. Cory as Trustee for the Estate of HDB, LLC, and since that date, the
9  Trustee has been operating the Debtor's Business pursuant to 11 U.S.C. § 1108.  *See*
10 Docket 69.

11     7.    On April 14, 2008, the U.S. Trustee appointed an Official Committee of
12 Unsecured Creditors pursuant to 11 U.S.C. § 1102(a)(1) and (b)(1). *See* Docket 171.

13     8.    On May 5, 2008, the Trustee filed a Motion to Approve Stipulation
14 Regarding (A) Use of Cash Collateral by Debtor Pursuant to 11 U.S.C. § 363(c)(2); (B)
15 Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361 and 363(e); and (C)
16 Authorizing Post-Petition Financing on a Senior Secured Basis Pursuant to 11 U.S.C. §
17 364(d)(1) (the "364 Loan Motion"), Docket No. 205, to approve the 364 Loan
18 Stipulation, and the various declarations in support thereof, including the Trustee
19 Financing Declaration, Furnas Financing Declaration, Hainsworth Financing Declaration
20 and Carr Financing Declaration.  *See* Docket Nos. 206, 209, 210 and 108.

21     9.    On May 9, 2008, the Trustee filed a Motion For Entry Of An Order
22 Establishing Procedures For And Authorizing: (1) Unit Sales, Free And Clear Of Liens,
23 Claims And Interests Pursuant to 11 U.S.C. § 363; and (2) Resolution And Payment Of
24 Claims (the "363 Motion"), Docket No. 232.

25     10.    On June 26, 2008, the Trustee filed a Motion to Authorize Transfer of
26 Permits by Debtor's Authorized Representative, Mark Oiness, or in the Alternative,

FENNEMORE CRAIG, P.C.

LAS VEGAS

23856.1

- 3 -

1  Ordering Immediate Transfer of Permits, Docket 296, which was granted by Order
2  entered July 2, 2008, Docket 412.

3    11. On July 8, 2008, the Trustee vacated the July 11, 2008 hearing on the 364
4  Loan Motion and the 363 Motion. The Trustee continues to negotiate with the Bank
5  Group members and their counsel in his constant efforts to secure sufficient construction
6  financing to support an Amended 364 Loan Motion and Amended 363 Motion.

**B. Relevant Facts**

**Debtor's Business and Property**

9    12. Debtor is the owner of approximately 20.8 acres of real property (the
10 "Property") located in Las Vegas, Clark County, Nevada, upon which Debtor is
11 developing a residential condominium community known as "Mira Villa" ("Business").
12 The Debtor's assets consist of real and personal property assets, including a bank account
13 at Colonial Bank and a bank account at Nevada State Bank ("Prepetition Bank Accounts")
14 The Property is in the Summerlin community, which is within the northwest portion of the
15 Las Vegas Metropolitan Area. See Cory Declaration, ¶ 4.

16   13. Debtor is constructing approximately 113 condominium units (the "Unit" or
17 "Units") within 21 buildings located on approximately 10.88 acres of the Property (the
18 "Building" or "Buildings"), together with a clubhouse, a swimming pool and certain
19 landscape and improvements located on the common elements or common areas
20 throughout the Property ("Common Area" or "Common Elements", and collectively with
21 the Units and Buildings, the "Project")[1]. Each Building is a four-story structure with
22 garage parking on the ground level and either five or six Units within each Building. Of
23 the 113 Units, five (5) Units are being constructed as models in two (2) Buildings. The

---

[1] Appurtenant to the sale of Units is the undivided interest in all of the Common Elements throughout the Property as required under NRS Chapter 116. Accordingly, references in this Stipulation to a Unit, Units or the Buildings in which the Units are located, incorporate (without further specific description) such undivided interest(s) in the Common Elements.

FENNEMORE CRAIG, P.C.
LAS VEGAS

23856.1

- 4 -

1  remaining approximately 9.92 acres (the "Partially Developed Parcel") has some Common Area improvements (i.e., curb, gutter, streets, and underground utilities).  See Cory Declaration, ¶ 5.

14. The Debtor commenced construction of improvements on the 113 Units located in 21 Buildings within Parcel Two[2] and a portion of Parcel One[3] and Parcel Three[4] and has commenced improvements on certain Common Lots on the Property. Completion of construction has been repeatedly delayed, and it remains to be completed. The Units range from 60% to 75% complete with the model Units being from 90% to 98% completed. See Cory Declaration, ¶ 6.

15. Debtor has asserted at various times that it is party to various numbers of contracts of sale ("Prepetition Sale Contracts") for Units. None of the Prepetition Sale Contracts had closed as of the Petition Date and none of the prospective purchasers is in possession of any of the Units. Earnest money deposits made by Purchasers pursuant to the Prepetition Sale Contracts are presently held on deposit with Equity Title Company and Stewart Title Company ("Earnest Money Deposits") pursuant to the terms and conditions of the Prepetition Sale Contracts and as required pursuant to Nevada law. See Cory Declaration, ¶ 7.

**Estate's Need for Additional Funds**

16. On a monthly basis, the Trustee incurs security, preservation and maintenance expenses of between $90,000 and $112,000 per month. This amount

---

[2] "Parcel Two" constitutes a portion of the Property lying within the exterior boundaries of the Final Map of Mira Villa Condominiums - Unit 2. Units located in Buildings 12 through 19, and Buildings 31 and 32 and Common Area identified as A through D are part of Parcel Two.

[3] "Parcel One" constitutes a portion of the Property lying within the exterior boundaries of the Final Map of Mira Villa Condominiums - Unit 1. Units located in Buildings 20 through 30, Building 40 and Common Area identified as A through G are part of Parcel One.

[4] "Parcel Three" constitutes a portion of the Property lying within the exterior boundaries of the Final Map of Mira Villa Condominiums - Unit 3. Units located in Buildings 6 through 11, 33 through 35 and Common Area identified as A through D are part of Parcel Three.

FENNEMORE CRAIG, P.C.
LAS VEGAS

23856.1

1  represents the costs necessary to physically secure the Property on a 24 hour basis,
2  properly insure the Property for casualty and property losses, and to pay utility and other
3  service providers to preserve and maintain the Property.  See Cory Declaration, ¶ 8.

4      17.  The Trustee requires additional funds because only $57,415.95 remains in
5  the Prepetition Bank Accounts, which is not sufficient to satisfy the preservation and
6  maintenance expenses for August, 2008.  Expenses for August, 2008 are projected at
7  $92,252.25, resulting in a shortfall of $34,836.30 for the month of August.  See Cory
8  Declaration ¶ 9, and Monthly Expense Projection, Cory Declaration Exhibit 2.

9      18.  Additionally, the Trustee will require funds in the approximate amount of
10 $215,000 to satisfy preservation and maintenance expenses for September and October of
11 2008.  Expenses for September are projected at just under $103,000, and expenses for
12 October are projected at just under $112,000.  See Cory Declaration ¶ 10, and Monthly
13 Expense Projections, Cory Declaration Exhibits 3 and 4.

14     19.  Although the Trustee continues his efforts to secure financing for
15 completion of the Project, the Trustee believes that it is necessary and in the best interests
16 of the estate to obtain this interim, short term loan to secure, preserve and maintain the
17 Property.  The Trustee has therefore filed this motion seeking postpetition financing in an
18 amount not to exceed $250,000, and in the exercise of his reasonable business judgment
19 he seeks approval of the 364(c)(1) Loan.  See Cory Declaration ¶ 11.

20     **Trustee's Efforts to Find Alternative Financing**

21     20.  In addition to his discussions with the Bank Group, the Trustee has spoken
22 with Robert Adamo of Mountain Funding and Steve Petri of Summit Investment
23 regarding this loan.  He received a proposal from Mountain Funding for a loan in the
24 amount of $750,000, that would require a senior secured lien on the entire Property, not
25 just the Project, and would necessarily require a priming lien battle with the Bank Group
26 and Aspen.  Additionally, the Mountain Funding loan had a 4% commitment fee, a twelve

FENNEMORE CRAIG, P.C.
LAS VEGAS

23856.1

1    percent (12%) interest rate and a $50,000 exit fee. No proposal was received from
2    Summit Investment. See Cory Declaration ¶12.

3        21.    The Trustee has made a good faith effort to find less burdensome credit
4    from sources other than the Bank Group. However, the only alternative proposal that he
5    received was from Mountain Funding on terms and conditions that are considerably less
6    favorable than the proposed 364 Loan from the Bank Group. See Cory Declaration ¶13.

### C. LEGAL AUTHORITY

#### 1. Approving the 364(c)(1) Loan is Appropriate

A Trustee is authorized to operate the Debtor's business under Bankruptcy Code section 1108. As part of that operation, the Trustee may incur unsecured debt in the ordinary course of business. 11 U.S.C. § 364(a). The Bankruptcy Code offers a Trustee additional flexibility to the extent that he needs additional credit, but cannot attract such credit on unsecured terms. Section 364 provides a progression of various protections to induce a postpetition lender to extend credit to a debtor in possession.

As a condition to extending the 364(c)(1) Loan, the Bank Group required the protections contained in Bankruptcy Code section 364(c)(1), which provides:

> If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt –
>
> (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title.

#### 2. Alternative Financing On Better Terms Is Not Available

The Trustee has made a good faith effort to obtain unsecured credit on a general unsecured or administrative priority basis from other sources. When time is of the essence, this is all that is required. *See, e.g., id.*; In re Reading Tube Indus., 72 B.R. 329,

FENNEMORE CRAIG, P.C.
LAS VEGAS

23856.1

- 7 -

333 (Bankr. E.D. Pa. 1987); In re Stacy Farms, 78 B.R. 494, 498 (Bankr. S.D. Ohio 1987).

    Prior to entering into the 364(c)(1) Loan with the Bank Group, the Trustee sought financing from other sources. Although the Trustee received an alternative proposal from Mountain Funding, the Mountain Funding proposal required collateral in the form of a priming lien on the entire Property that would likely draw objections from the Bank Group and Aspen. Additionally, the Bank Group 364(c)(1) Loan is on more favorable terms and conditions because it does not require a priming lien. Under the circumstances, the Trustee has therefore sufficiently satisfied the requirements of section 364(c)(1).

### D. CONCLUSION

The Court should therefore enter an Order:

1. Approving, pursuant to 11 U.S.C. §364(c)(1), postpetition financing in an amount not to exceed Two Hundred Fifty Thousand ($250,000) Dollars (the "364(c)(1) Loan"), and for the Trustee to adopt and execute the all of the necessary loan documents which shall evidence the terms and conditions of the 364(c)(1) Loan. A summary of principal terms for the 364(c)(1) Loan is attached as Exhibit 1.

2. Approving the terms and conditions of the 364(c)(1) Loan and authorizing the Trustee to enter into the 364(c)(1) Loan on a final basis.

3. Authorizing the Trustee to enter into the loan documents necessary to obtain the September 364(c)(1) Loan and take the all of the actions necessary to satisfy the conditions of the September 364(c)(1) Loan.

4. Authorizing the Trustee, pursuant to 11 U.S.C. § 364(c)(1), to grant superpriority administrative expense for the 364(c)(1) Loan on a final basis.

///
///
///
///

FENNEMORE CRAIG, P.C.
LAS VEGAS

23856.1

5. For such other and further relief as the Court deems appropriate under the circumstances.

Respectfully submitted,

FENNEMORE CRAIG, P.C.

By /s/ Laurel E. Davis
    Laurel E. Davis

Counsel for Timothy S. Cory,
Chapter 11 Trustee