Entered on Docket
December 03, 2008

_____
Hon. Bruce A. Markell
United States Bankruptcy Judge

FENNEMORE CRAIG, P.C.
LAUREL E. DAVIS, ESQ.
Nevada Bar No. 3005
E-MAIL: ldavis@fclaw.com
300 S. Fourth Street, #1400
Las Vegas, NV 89101
Telephone (702) 692-8000
Facsimile (702) 692-8099
Attorney for Timothy S. Cory
Chapter 11 Trustee of HDB, LLC

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>HDB, LLC,<br><br>      Debtor. | Case No.: BK-S-08-10685-BAM<br>Chapter 11<br><br>Date:   November 25, 2008<br>Time:  3:00 p.m. |

**ORDER APPROVING AMENDED AND RESTATED STIPULATION REGARDING (A) USE OF CASH COLLATERAL BY DEBTOR PURSUANT TO 11 U.S.C. § 363(c)(2); (B) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. § 361 AND 363(e); AND (C) AUTHORIZING POST-PETITION FINANCING ON A SENIOR SECURED BASIS PURSUANT TO 11 U.S.C. § 364(d)(1)**

On November 25, 2008, the <u>Motion for Entry of an Order Approving Amended and Restated Stipulation Regarding(A) Use of Cash Collateral By Debtor Pursuant to 11 U.S.C. § 363(c)2; (B) Granting Adequate Protection Pursuant to 11 U.S.C. § 361 and 363(e); and (C) Authorizing Post Petition Financing on a Senior Secured Basis Pursuant to 11 U.S.C. § 364(d)(1)</u> (the "Motion"); having been filed by Timothy S. Cory, Chapter 11 Trustee ("Trustee") for the estate of HDB, LLC (Debtor) came on for hearing before the above-entitled Court.[1]  Laurel E.

---

[1] Unless otherwise ascribed herein or otherwise noted, all defined terms have the meaning set forth in the Motion and Amended and Restated Stipulation.

27406.4                                 1

Davis, Esq. of the law firm of Fennemore Craig, P.C. appearing on behalf of the Trustee, Gerald M. Gordon, Esq., and Christine Bricker, Esq., of the law firm Gordon & Silver, LTD. appearing on behalf of Nevada State Bank, Secured Creditor and proposed 364 Lender; James Greene, Esq. of the law firm Brownstein Hyatt Farber Schreck, LLP, appearing on behalf of TierOne Bank, Secured Creditor and proposed 364 Lender; Lance Earl, Esq., of the law firm Holland & Hart LLP, appearing on behalf of Colonial Bank, Secured Creditor and proposed 364 Lender; Donna M. Osborn, Esq. of the law firm Marquis & Aurbach, appearing on behalf of the Unsecured Creditors Committee; and other appearances having been noted in the Court's record. The Court read and considered all relevant pleadings and papers including but not limited to the Motion and the attached <u>Amended and Restated Stipulation For (A) Use of Cash Collateral By Debtor Pursuant to 11 U.S.C. § 363(c)2; (B) Granting Adequate Protection Pursuant to 11 U.S.C. § 361 and 363(e); and (C) Authorizing Post Petition Financing on a Senior Secured Basis Pursuant to 11 U.S.C. § 364(d)(1)</u> ("Amended and Restated Stipulation") and <u>Principal Term Summary</u> ("Term Sheet"), including all modifications and clarifications set forth on the record, and after due deliberation and consideration, and good and sufficient cause appearing therefor:

The Court Hereby Finds and Concludes as Follows:

1.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.   The Trustee has provided notice of the Motion and hearing in compliance with Bankruptcy Rule 4001(b), (c) and (d), Bankruptcy Rule 9014 and LR 4001(b).

3.   Upon the entry of this Order and upon the satisfaction of all Closing conditions as provided for in the Motion and Amended and Restated Stipulation, all necessary action will have been taken to permit the construction and full use of the Improvements for their intended purpose under applicable Legal Requirements.[2]

---

[2] This term is defined in the proposed Loan and Security Agreement, attached as Exhibit 1.C to the <u>Declaration of Timothy S, Cory in Support of Motion For Entry Of An Order Approving Amended And Restated Stipulation Regarding (A) Use Of Cash Collateral By Debtor Pursuant To 11 U.S.C. § 363(c)(2); (B) Granting Adequate Protection Pursuant To 11 U.S.C. §§ 361 And</u>

27406.4                                                2

4. No consent, approval, authorization or order of any Governmental Authority or other Person is required for the execution, delivery and performance by Trustee on behalf of Debtor of, or compliance by Debtor with, the 364 Loan Documents or the consummation of the transactions contemplated thereby, other than those which already have been obtained by Debtor.

5. The execution and delivery of the 364 Loan Documents by Trustee on behalf of Debtor and the performance of his obligations hereunder and thereunder will not conflict with any Legal Requirement to which the Trustee or Debtor is subject, or conflict with, result in a breach of, or constitute a default under, any of the terms, conditions or provisions of any agreement or instrument to which Debtor is a party or by which it is bound, or any order or decree applicable to Debtor, or result in the creation or imposition of any Lien on any of Debtor's assets or property (other than pursuant to the 364 Loan Documents).

6. The 364 Loan is in the best interests of the Debtor's estate and its creditors, as the 364 Loan will, among other things, provide the Debtor with necessary liquidity to sustain operation of the Debtor's Business and enhance the Debtor's prospects for a successful reorganization through the completion and sale of the Project. It is in the best interests of the Debtor's estate to complete construction of the Project and Property Improvements and to sell the 113 Units to maximize value to the estate and creditors. In order to accomplish this objective, the Trustee must maintain and preserve the Property through borrowing sufficient funds to secure the Property, complete construction of the Project and Property Improvements, market and sell the Units and satisfy allowed secured claims evidenced by valid and perfected liens against the Project.

7. The Debtor: (a) is indebted to the Bank Group for all of the amounts due under the Bank Group Loans, which Bank Group Loans are not subject to any defense, counterclaim or offset of any kind, as of the Petition Date; and (b) is liable to the Bank Group under the Bank

---

(continued)
363(e); And (C) Authorizing Post-Petition Financing On A Senior Secured Basis Pursuant to 11 U.S.C. § 364(d)(1) and the Amended And Restated Motion For Entry Of An Order Establishing Procedures For And Authorizing: (1) Unit Sales, Free And Clear Of Liens, Claims And Interests Pursuant To 11 U.S.C. § 363; And (2) Resolution And Payment Of Claims filed on October 28, 2008, as Doc. #495.

27406.4                                         3

Group Loan Documents as set forth below (inclusive of interest and fees accrued and unpaid thereon and other costs, expenses and indemnities). The Bank Group Liens as evidenced by the Bank Group Loan Documents are valid, perfected, unavoidable and enforceable against the Collateral in which the Bank Group Liens are granted pursuant to the Bank Group Loans. *Notwithstanding* the foregoing binding admissions, agreements and acknowledgements on the part of the Trustee and Debtor: (a) other parties in interest on their own behalf may seek to avoid or challenge the validity, perfection or enforceability of the Bank Group Liens; and (b) the Bank Group specifically reserves all of their legal, equitable and other applicable rights to defend the validity, perfection, extent of, enforceability and priority of the Bank Group Loans and the Bank Group Liens and to challenge the standing of any such parties in interest to seek to avoid or challenge the validity, perfection, extent of or enforceability of the Bank Group Loans and the Bank Group Liens, whether on such parties in interest own behalf or on behalf of the Debtor.

9. Prior to the Petition Date, Debtor was in default under some or all of the Bank Group Loan Documents and as a result of the filing of the Case, Debtor is in default under all of the Bank Group Loan Documents.

10. As of the Petition Date the unpaid balances due under the various Bank Group Loans were as follows:

(a) The NSB Loan was $23,962,625.01 plus accrued interest of $1,469,587.51 at the Note Rate and $1,904,094.23 at the Default Rate, for a total of $27,336,306.75, plus late fees, other charges and expenses, reasonable attorneys' fees and costs and expenses of collection.

(b) The First TierOne Loan was $11,122,216.65 plus accrued interest of $88,587.16 at the Note Rate and $375,825.07 at the Default Rate, for a total of $11,586,628.88, plus late fees, other charges and expenses, reasonable attorneys' fees and costs and expenses of collections.

(c) The Second TierOne Loan was $8,062,000.00 plus accrued interest of $64,216.07 at the Note Rate and $272,428.42 at the Default Rate, for a total of $8,735,288.98, plus late fees, other charges and expenses, reasonable attorneys' fees and

27406.4

costs and expenses of collection.

(d)    The First Colonial Loan was $11,150,000.00 plus accrued interest of $152,769.58 at the Note Rate, for a total of $11,302,769.58, plus late fees, other charges and expenses, reasonable attorneys' fees and costs and expenses of collection.

(e)    The Second Colonial Loan was $10,035,859.73 plus accrued interest of $127,192.74 at the Note Rate, for a total of $10,163,052.47, plus late fees, other charges and expenses, reasonable attorneys' fees and costs and expenses of collection.

10.    Given the Debtor's current financial condition, the Debtor cannot obtain unsecured credit allowable under § 503(b)(1) of the Bankruptcy Code as an administrative expense, and the 364 Loan is not otherwise available without the Debtor securing, pursuant to § 364(d)(1) of the Bankruptcy Code, such indebtedness and obligations with senior security interests in and liens on the Project. The Debtor has no property that could be used to provide adequate protection to the Bank Group to protect the Bank Group Liens as required by Section 364(d) without the Bank Group's consent, which the Bank Group is not willing to provide except pursuant to the terms of the Amended and Restated Stipulation. The 364 Lenders in agreeing to extend credit and provide financing to Debtor as provided for in the Motion, Amended and Restated Stipulation and the Loan Document have individually and collectively acted in good faith.

Having placed its additional findings and conclusions of law on the record in accordance with Federal Rule of Bankruptcy Procedure 7052 incorporating Federal Rule of Civil Procedures 52(a), and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1.    The Motion, including and incorporating the Amended and Restated Stipulation, and Term Sheet, is approved, and the Amended and Restated Stipulation shall be binding upon the parties as provided for therein.

2.    Upon and after the Closing the Trustee on behalf of the Debtor shall be entitled to use all Cash Collateral contained in the Pre-Petition Bank Accounts and post petition proceeds from the sale of Units in the Project and/or the Project itself pursuant to the terms of and based

27406.4

5

upon the conditions set forth in the Amended and Restated Stipulation.

3. The Trustee on behalf of the Debtor is expressly authorized to borrow from the Lenders and Credit Agent, the 364 Loan in accordance with the Amended and Restated Stipulation and Term Sheet, and use such proceeds in the operation of the Debtor's business and complete construction of the Project and market the 113 Units, on terms and subject to the conditions set forth in the Motion, Amended and Restated Stipulation and Term Sheet up to a total of $37,888,639.

4. The Trustee on behalf of the Debtor is expressly authorized and directed to execute and deliver the 364 Loan Documents, including the Loan Agreement, Promissory Note, Deed of Trust, Security Agreement and Assignment of Leases, and Fixture Filing, the terms of which 364 Loan Documents shall adopt the Budget and evidence the terms and conditions of the 364 Loan, in form and content mutually acceptable to the Trustee and 364 Lenders in their sole discretion.

5. The Trustee on behalf of the Debtor is authorized and directed to prepare, sign and file all documents necessary to accomplish the Annexation required by Paragraph 15.11 of the Amended and Restated Stipulation.

6. Upon the Closing, each Loan Document shall be the legal, valid and binding obligation of Debtor, enforceable against Trustee and Debtor in accordance with its terms.

7. As security for the obligation, the Lenders and Credit Agent shall have and are hereby granted without the necessity of compliance with any federal, state or local requirements or law requiring execution, filing, notice or recordation of deeds of trust, security agreements, pledge agreements, financing statements, trademark, copyright, trade name or patent assignment filings with the United States Patent and Trademark Office or United States Copyright Office, landlord lien waivers, licensee or licensor consents or otherwise ("Perfection Act"), pursuant to 11 U.S.C. § 361 and 364(d)(1) a valid, perfected and enforceable first priority, senior secured lien and security interest ("Senior Lien") upon all of Debtor's right, title and interest in, to and under all of the Units and Buildings and undivided interests in all of the Common Elements appurtenant to the Project, including the Sale Contracts, senior to all liens and security interests

27406.4

previously granted in the Project, including mechanics liens which arise under the operation of applicable state law.

8. No additional liens or claims superior to or *pari passu* with the 364 Lien shall be granted while any portion of the 364 Loan or Bank Group Loans remains outstanding, absent the 364 Lenders' prior written consent in their sole and absolute discretion.

9. Upon and after the Closing, the Trustee and Debtor will warrant and defend the validity and priority of the Liens of the Security Documents on the Property against the claims of all Persons, subject only to Permitted Encumbrances.

10. The Trustee shall: (a) provide notice to the Bank Group as soon as practicable of the occurrence of any Event of Default (hereinafter defined) or any event known to the Trustee or his counsel which, with the passage of time or giving of notice, or both, would constitute an Event of Default; (b) oppose any appeal or other challenge to the Amended and Restated Stipulation or this Order, including any action taken to amend, modify, or vacate the Amended and Restated Stipulation or this Order without the Bank Group's written consent; (c) only incur indebtedness reasonably necessary for the operation of the Business and to preserve and protect the estate and estate assets, all in accordance with the Budget; and (d) not commence any action against the Bank Group (including the commencement of an avoidance action as provided for in Sections 510, 542, 543, 544, 545, 547, 548, 549, 550 and 553(b)) of the Bankruptcy Code which would impair or impact upon the rights of the Bank Group regarding the 364 Loan and the Bank Group Obligations without the prior written consent of the Bank Group in their sole and absolute discretion.

11. As provided in the Amended and Restated Stipulation, the Trustee's authority to: (a) obtain the 364 Loan; (b) use the 364 Loan Funds; and (c) use Cash Collateral shall terminate immediately upon the occurrence and continuation of any of the following events (the "Events of Default"):

    (a). The Trustee violates any of the material provisions of the 364 Loan Documents, Sale Order, this Order or the Amended and Restated Stipulation except for those defaults waived in writing by the Bank Group;

27406.4

7

(b).     The Case is converted to a case under Chapter 7 of the Bankruptcy Code;

(c).     Any lien, security interest or priority created by the Amended and Restated Stipulation or this Order shall, for any reason, cease to be valid and enforceable in accordance with the original terms of the Amended and Restated Stipulation; or an order is entered by this Court amending, modifying, supplementing, vacating, or staying the Sale Order, this Order or the Amended and Restated Stipulation without the written consent of the Bank Group;

(d).     This Court enters an order:

(i).     Granting relief from the automatic stay applicable under Section 362 of the Bankruptcy Code to the holder of any security interest or lien upon the Project; or

(ii).    Granting any lien or security interest that is senior or pari passu to the Bank Group Liens or the 364 Lien;

(iii).   The Trustee or Debtor files any motion or plan of organization or takes any action inconsistent with the Sale Order, this Order or the Amended and Restated Stipulation;

(iv).    A plan of reorganization which is opposed by the Bank Group is confirmed by this Court; or

(v).     The Trustee defaults in the performance of any of its obligations (or the Court fails to enter an order) as set forth in the Sale Order, this Order or the Amended and Restated Stipulation.

12.    Upon the occurrence and continuation of any of the events set forth above past a cure period of five business days ("Cure Period")  as set forth in a written notice to the Trustee, such occurrence shall be deemed to be an event of default ("Event of Default") and the Trustee's authority to use Cash Collateral or to have access to the 364 Loan Funds shall immediately and automatically terminate, and, upon the expiration of the Cure Period, the Bank Group shall be entitled to submit an ex parte Order to this Court providing for relief from the automatic stay of Section 362(a) of the Bankruptcy Code to pursue the remedies as provided for in the Bank Group

27406.4                                         8

1  Loan Documents, 364 Loan Documents and applicable state law.  Provided however, that any
2  Event of Default may be waived in writing by the Bank Group.  Upon the receipt by the Trustee
3  of any such written waiver, the Trustee's authority to use Cash Collateral or to incur
4  indebtedness under the 364 Loan pursuant to the terms and conditions of this Order or the
5  Amended and Restated Stipulation shall be retroactively reinstated as if no Event of Default had
6  occurred.  The Bank Group consents to the Trustee seeking a hearing before the Court on order
7  shortening time during the Cure Period if the Trustee contests the right of the Bank Group to
8  declare an Event of Default and terminate the use of Cash Collateral and advances under the 364
9  Loan.

10      13.    The Court having found that the Lenders both individually and collectively in
11  agreeing to extend credit and provide financing to Debtor have acted in good faith, the Lenders
12  and Credit Agent are entitled to the full protections under § 364(e) of the Bankruptcy Code with
13  respect to the 364 Loan and the Senior Lien as created or authorized by this Order.  In the event
14  that this Order or any authorization contained herein is stayed, vacated, reversed or modified on
15  appeal, any such stay, modification, reversal or vacation of this Order shall not affect the validity
16  of any obligation of the Trustee and Debtor to the Lenders and Credit Agent incurred pursuant to
17  this Order.  Notwithstanding any such stay, modification, reversal or vacation, all financing
18  provided pursuant to the 364 Loan Documents, Amended and Restated Stipulation or this Order,
19  and any obligations incurred by the Debtor pursuant to the 364 Loan Documents, Amended and
20  Restated Stipulation or this Order prior to written notice of the effective date of any such stay,
21  modification, reversal or vacation, shall be governed in all respects by the original provision
22  hereof and the Lenders and Credit Agent shall be entitled to all the rights, privileges, and
23  benefits, including without limitation, the security interests and priorities granted pursuant to this
24  364 Loan Documents, Amended and Restated Stipulation and this Order.

25      14.    Neither the lien granted to the Bank Group under this Order pursuant to Section
26  364(d) of the Bankruptcy Code nor any other provision of this Order is intended or shall be
27  deemed to negate, alter, amend or supersede in any manner the terms, conditions and restrictions
28  related to the construction and development of the Project that are contained in the Declaration

of Development Covenants and Restrictions dated as of December 14, 2001 and recorded on December 18, 2001 with the Office of the County Recorder of Clark County, Nevada in Book 20011218 as Instrument No. 00146 and any and all amendments thereto, all of which shall remain if full force and effect.

15. Nothing in this Order shall negate, alter, amend or supersede the obligations of the Debtor under the Agreement for the Purchase and Sale of Real Property between Howard Hughes Properties, Inc. and Westmark Homes (as assignor to the Debtor) dated as of December 14, 2001, and any and all amendments thereto without a further Order of this Court.

16. Upon entry of an this Order, Aspen shall be entitled to receive immediate disbursement of the loan proceeds in the approximate amount of $1,500,000 remaining on deposit with Nevada Construction Services for the benefit of the Debtor and Aspen ("Construction Control Funds"). Nevada Construction Services is therefore hereby authorized and directed to release the Construction Control Funds to Aspen upon entry of this Order.

17. Notwithstanding anything to the contrary in the Bankruptcy Code or the Bankruptcy Rules, this Order shall be entered as, and shall be, effective immediately upon its entry on the Docket in this Case as a final Order of the Court for all purposes.

DATED: November 25, 2008.

PREPARED AND SUBMITTED:

FENNEMORE CRAIG, P.C.


By:   /s/ Laurel E. Davis
LAUREL E. DAVIS, ESQ.
300 S. Fourth St., Ste. #1400
Las Vegas, NV 89101
Attorneys For Timothy S. Cory,
Chapter 11 Trustee

27406.4

10

APPROVED:

BROWNSTEIN HYATT FARBER SCHRECK

By  /s/ James D. Greene
JAMES D. GREENE, ESQ.
100 City Parkway, Suite 1600
Las Vegas, NV 89106
Attorneys For TierOne Bank

APPROVED:

HOLLAND & HART, LLP

By  /s/ Lance Earl
LANCE EARL, ESQ.
3930 Howard Hughes Pkwy, 4th Floor
Las Vegas, NV 89169
Attorneys for Colonial Bank

APPROVED:

MARQUIS & AURBACH

By  /s/ Donna M. Osborn
DONNA M. OSBORN, ESQ.
10001 Park Run Drive
Las Vegas, NV 89145
Attorneys for Unsecured Creditors Committee

APPROVED:

GORDON SILVER

By  /s/ Gerald M. Gordon
GERALD M. GORDON, ESQ.
3960 Howard Hughes Pkwy, 9th Floor
Las Vegas, NV 89169
Attorneys for Nevada State Bank

# # #

27406.4

11

**LR 9021 CERTIFICATION**

In accordance with LR 9021, counsel submitting this document certifies as follows:

[ ]     The Court waived the requirement of approval under LR 9021.

[x ]    Except as noted below, counsel waived the requirement of approval under LR 9021 on the record at the time of the hearing.

[ ]     No parties appeared or filed written objections, and there is no trustee appointed in this case.

[x]     A copy of this proposed order was delivered to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and any trustee appointed in this case, and each has approved or disapproved the order, or failed to respond, as indicated below: (list each party and whether the party has approved or failed to respond to the document).

Gerald Gordon, Gordon & Silver, counsel for Nevada State Bank, approved

James Greene, Brownstein Hyatt Farber Schreck, counsel for TierOne Bank, approved

Lance Earl, Holland & Hart, LLP, counsel for Colonial Bank, approved

Dean Waldt, Ballard Spahr Andrews & Ingersol, counsel for Howard Hughes Properties, Inc., requested additional language, which has been added

Donna Osborn, Marquis & Aurbach, counsel for the Unsecured Creditor Committee, approved

Robert Kinas, Snell & Wilmer, counsel for Bergelectric, approved

Nile Leatham, Kolesar & Leatham, counsel for Aspen Financial, approved

Victoria Nelson, Santorro, Driggs, Walch, Kearney, Holley & Thompson, counsel for Bank of Nevada, approved

27406.4

12